UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ERIC LEWAN,

        Plaintiff,                     Case No. 14-cv-10953

v.                                         Honorable Thomas L. Ludington

SOO MARINE SUPPLY, INC.,

        Defendant.

_____/

**OPINION AND ORDER ADJUDICATING SEAMAN STATUS UNDER JONES ACT**

On March 10, 2013, Plaintiff Eric Lewan slipped and fell while placing pallets of frozen food in a workplace refrigerator, injuring his back. He sued. He claims that he was hurt as a result of the negligence of his employer, Defendant Soo Marine Supply, Inc.[1] As a result, Lewan argues, Soo is liable under, alternatively, the Longshore And Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905(b), or the Jones Act, 46 USC § 30104. *See* Second Am. Compl., ECF No. 22.

The parties have submitted the question of which of the two statutes Defendant Soo may be liable under as a preliminary issue of fact to be decided by the Court based upon the evidence garnered during discovery. For Lewan to be entitled to recovery under the Jones Act, he must qualify as a "seaman." Determining whether an employee qualifies as a seaman is a fact-specific inquiry. If Lewan is not a seaman, his recovery will be limited to the LHWCA.

**I.**

---

[1] Lewan initially also filed suit against MCM Properties, Inc., the owner of the Ojibway (it leases the boat to Soo Marine). Lewan voluntarily dismissed MCM on March 25, 2014.

The parties submitted the issue of Lewan's seaman status as though they have elected a bench trial, with the facts organized by pretrial deposition testimony. Accordingly, the Court will make findings of fact and conclusions of law. Fed. R. Civ. P. 52(a)(1). The facts as recited below are the Court's findings of fact. Likewise, the analysis section below is the Court's conclusions of law.

## II.

Eric Lewan is a resident of Sault Ste. Marie, Michigan who worked for nearly four years as a warehouseman/deckhand for Defendant Soo Marine Supply.

Soo Marine Supply is a ship chandler. It is in the business of supplying freighters, tankers, and other ships that pass through the Soo Locks (located between Sault Ste. Marie, Michigan and Sault Ste. Marie, Canada) with various provisions and goods. To accomplish this task Soo Marine operates a single vessel, the M/V Ojibway.[2] The Ojibway is a 60 foot motor-operated, commercially-licensed vessel. It requires a crew of three to operate and is equipped with a crane for delivering supplies to the boats it services.

## A.

Soo Marine hired Lewan on May 3, 2010. From the time he was hired until he left his employment, Lewan worked as a warehouseman/deckhand. The function of a warehouseman/deckhand was to aid in the movement of supplies around the Soo Marine facility and to the Ojibway. Additionally, the warehouseman/deckhand would occasionally need to set out on the Ojibway to make deliveries to passing vessels—the "deckhand" portion of the job. The Ojibway did not have a permanent crew, so for any given delivery a warehouseman/deckhand may be called upon to assist with a delivery. Lewan was also required

---

[2] The Ojibway is Soo Marine's only seagoing vessel (though it is not owned by Soo Marine), but Soo Marine does, occasionally, conduct supply runs overland via truck. These jobs account for less than 10% of Soo Marine's business. The use of the Ojibway constitutes the balance.

at times to perform maintenance work on the Ojibway, including "shoveling snow, cleaning the deck, . . . rigging the crane, and painting the boat." Pl.'s Trial Br. 11, ECF No. 31.

Soo Marine maintained three different positions in its chandlery business. One of the positions was that held by Lewan: warehouseman/deckhand. In addition, Soo Marine employed warehousemen/captains and warehousemen/crane operators. Both of these positions functioned as warehousemen in the same way as Lewan. The captains, however, also operated the Ojibway. Likewise, instead of manning the Ojibway, the crane operators did just that: operated the crane on the Ojibway when delivering provisions and goods to Soo Marine's customers.

Finally, most employees, but predominantly warehousemen/deckhands, worked as night watchmen. Working as a watchman required being present at the Soo Marine facility outside of business hours. The purpose of the watchman was to field calls from boats during off-hours while the rest of Soo Marine's employees were off-work. If a call from a boat came in, the watchman would notify the on-duty but off-site employees who would then come into work to service the boat.

**B.**

Soo Marine required all of its employees to record the time they worked. Beginning in early 2010, Soo Marine required its employees to track the hours they spent on the vessel and the hours they spent ashore—colloquially, vessel hours and shore hours. Soo Marine did not maintain a uniform set of policies governing how its employees reported their hours. In general, employees calculated vessel hours as the time "underway" on the Ojibway. That is, while the Ojibway is travelling from the dock, to the customer ship, and back to the dock. Some employees, however, counted additional time as "vessel hours." For example, when a captain and crane operator would be called in during off-hours to make a supply run, they would count

as vessel hours the time from when they are called in until the time they clocked out. A few employees even logged as vessel hours time they spent fishing from the Ojibway.

As for Lewan, he was instructed to only log as vessel hours the time he was underway. Again, this means the time he was on the Ojibway from the time the Ojibway left the dock to service a vessel until the time it returned. While Lewan was working as watchman he only logged as vessel hours those hours that he was underway. The time he spent waiting onsite at Soo Marine for calls from passing vessels he logged as shore time. As explained above, the crewmembers Lewan would call in to service a vessel outside of the main hours would log their entire time from home to clocking out as vessel hours.

## C.

While working at Soo Marine, Lewan had to maintain a Merchant Mariner Masters Credential through the United States Coast Guard. In order to maintain this credential, Lewan had to certify, through Soo Marine, that he spent at least 365 days onboard the Ojibway over a five-year period. Soo Marine certified this vessel time by filing a Small Vessel Sea Service Form with the Coast Guard. Lewan easily met these requirements. From 2010 to 2013 Lewan spent a total of 761 days aboard the Ojibway, with an average of four hours per vessel day spent on the ship.[3]

After the commencement of this action, Soo Marine amended Lewan's Small Vessel Sea Service Forms that were filed with the Coast Guard. The new forms reflected a total of 384 days spent aboard the Ojibway between 2010 and 2013. Further, the forms were amended to reflect that Lewan spent an average of 2.62 hours underway during 2010 and 2011 and an average of

---

[3] The parties do not explain why this initial vessel days figure (761) is so high, particularly in light of the modified vessel days figure (384) that the parties agree is correct. Examining the Small Vessel Sea Service forms prior to amendment reveals that the total days listed cannot be correct. Accordingly, neither party reasonably argues that Lewan actually worked 761 days aboard the Ojibway from 2010 to 2013.

2.26 hours underway during 2012 and 2013. This adjustment was based on an audit of Lewan's timesheets performed by Soo Marine management. The management employee created a spreadsheet based on the time that Lewan had recorded in his timesheets as being on the vessel.

On average, Lewan recorded 1.6 hours of vessel time per boat that the Ojibway serviced. Soo Marine employees, including Lewan, agree that the actual transit time of the Ojibway, dock to dock, was somewhere between thirty minutes and one hour. The predominant estimate for time spent dock-to-dock was forty-five minutes. The employees also agree that it takes somewhere between ten and fifteen minutes to load the Ojibway for a service trip and unload it after (with unloading often taking less time). Thus, Lewan's average recorded hours fairly reflect both the time Lewan spent loading and unloading the Ojibway and his time spent aboard servicing vessels.

Under the calculation performed by Soo Marine management, Lewan spent 5806.07 hours working for Soo Marine and spent 1030.07 of those hours on the Ojibway. This resulted in Lewan spending 17.7% of his time on the vessel. This stands in contrast to the number of days Lewan spent on the vessel: 379 out of 637.[4] Utilizing a vessel days calculation, Lewan was onboard the Ojibway for 59.5% of the days he worked for Soo Marine.[5]

---

[4] The audit by Soo Marine management produced a vessel days figure slightly variant from the total submitted in the revised Small Vessel Sea Service Forms. The revised forms reflected 385 days, whereas the audit arrived at a total of 379 days.

[5] Lewan included a spreadsheet and declaration from his attorney's legal assistant that purports to demonstrate an alternative calculation under which Lewan would be credited with 41% vessel hours. Under this method, Lewan counted all of the time he was serving as watchman as vessel hours. That is, he counted as vessel hours all the time he was at Soo Marine awaiting calls from ships passing in the night or on the weekends. His rationale for counting this time is the fact that the crane operators and captains on-call overnight and during weekends counted as vessel hours all the time from when they left home to when they clocked out after servicing a vessel. The on-call captains and crane operators did not limit their vessel hours simply to travelling dock-to-dock, as Lewan did.

The merits of this approach will be discussed below, but, for present purposes, it should be noted that Lewan's calculations will be disregarded. The declaration by the legal assistant and the accompanying spreadsheet assert that Lewan worked a total of 1513.5 hours with Soo Marine and spent 626 of those hours 'on the vessel,' under this alternate methodology. But those totals are irreconcilable with the data in the attached spreadsheet.

### III.

Under the Jones Act, "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. The Jones Act does not define the term "seaman." As a result, federal courts (and some state courts) have struggled with determining what qualifies an employee as a seaman under the Jones Act.

Most recently, in *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995), the Supreme Court established a two-prong test to guide courts in this determination. "First, . . . an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission." *Id*. at 368 (internal quotation marks and citations omitted). The Court explained that the first prong limits the Jones Act's protections only "to those maritime employees who do the ship's work." *Id*. Nevertheless, "this threshold requirement is very broad: 'All who work at sea in the service of a ship' are eligible for seaman status." *Id*. (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 354 (1991)).

"Second, . . . a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id*. The Court noted that "[t]he fundamental purpose of this substantial connection requirement is . . . to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation[.]" *Id*. The Court clarified that "[t]he Jones Act remedy is reserved for sea-based

---

Adding up just Lewan's hours for 2012 reflects a total of 1896.25 hours worked. Thus, the legal assistant's representation that "out of a total of 1513.5 hours worked throughout Mr. Lewan's employment up to his injury, Mr. Lewan had 626 total vessel hours, or 41% of his employable time at [Soo Marine]" is necessarily inaccurate. The spreadsheet attached to the legal assistant's declaration actually attests to nearly 6000 hours worked by Lewan. It is not the Court's task to pore over Lewan's time sheets in order to reach a correct calculation based on Lewan's alternate vessel hours theory to arrive at what would be the correct percentage under that method.

maritime employees whose work regularly exposes them to the special hazards and disadvantages to which they who go down to sea in ships are subjected." *Id*. at 370 (internal quotation marks omitted).

The Court went on to adopt a "rule of thumb" from the Fifth Circuit, for assessing whether a seagoing employee had a substantial enough connection to a vessel in navigation to be considered a seaman under the Jones Act. The rule provides that "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id*. at 347. The rule, it is important to note, is merely rough guidance. It "serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases." *Id*. Thus, following *Chandris*, courts have adhered to the two-prong test articulated by the Supreme Court and, in some instances, identified circumstances where deviation from the 30% rule was appropriate.

**A.**

The first question for Lewan is whether he meets the two-prong *Chandris* test. More particularly, the question that the parties dispute is whether Lewan meets the 30% "rule of thumb" identified in *Chandris* and, if he does or does not, if a deviation from the heuristic measure is warranted.

Lewan does not meet the *Chandris* threshold. The parties agree that Lewan meets the first prong of the *Chandris* test, but dispute whether he meets the 30% threshold. Lewan's hours on the Ojibway, as calculated by Defendant, rise to only 17.7% of Lewan's total time with Soo Marine. Lewan encourages the Court to adopt a vessel days approach, rather than a vessel hours approach. The basis for this argument is the fact that Soo Marine recorded Lewan's vessel days on the Small Vessel Sea Service Forms it submitted to the Coast Guard. But Soo Marine also

recorded the average hours per day that Lewan spent onboard the Ojibway on those forms. Thus, there is no reason why, based on those forms alone, a less accurate measure of time—days—should be used over a more specific measure—hours. Additionally, Lewan has not presented any authority under *Chandris* or its progeny that limits a court's inquiry to the days an individual is connected to a vessel. Because a more accurate measure of time is available, it is appropriate to use it.

Under the vessel hours approach, Lewan falls well short of the 30% threshold. Lewan argues, as noted above, that he should be credited for the time he was serving as night watchman. But this argument is problematic for two reasons. First, Lewan has not met his burden of demonstrating how the time he served as night watchman would affect his percentage of vessel time. Second, counting all of his time on watch as vessel time is not justified and would over-count his time. While other employees arguably over-counted their time when called in during off hours, that does not mean Lewan would be similarly entitled to do so under the Jones Act. Those employees were recording their time for Soo Marine's time sheets. Were they to face examination under the *Chandris* test and the Jones Act, it is not clear that those hours would be properly counted as vessel hours. The point is, just because an employee records something as a vessel hour, does not mean that it is vessel time for purposes of the Jones Act.

Even if the excessive hours recorded by captains and crane operators who were on call could count as vessel time under *Chandris*, Lewan still would not be allowed to count all of his time on watch. The captains and crane operators were counting from the time they were called in to the time they clocked out. Lewan seeks to include significantly more time. Lewan wants to count hours where he was sitting at Soo Marine on watch when there was no boat to be serviced. Those hours would not properly count under *Chandris*. There could be an argument to be made

that Lewan could count from the time a vessel calls in to be serviced until the time when the captain and crane operator leave (thus crediting Lewan with the same time those individuals recorded) but that would be significantly less time than Lewan needs to meet the rule of thumb.

The best approximation of Lewan's additional watchman time would be by using the average hours-per-day onboard the Ojibway listed on Lewan's original Small Vessel Sea Service Forms. Those forms listed four hours per day, whereas the modified forms listed roughly two and a half hours per day. Using the more generous figure from Lewan's original forms, Lewan only reaches 26% of his time being vessel time, still short of the *Chandris* threshold.

**B.**

The next question, since Lewan falls short of *Chandris*'s threshold, is whether Lewan's duties require a deviation from the 30% rule of thumb. Lewan claims a deviation is warranted because "[t]he testimony of all [Soo Marine] Management and hourly laborer co-workers substantiates the fact that all activities engaged in by Mr. Lewan during the trajectory of [her] entire career were directly related to the service of the M/V OJIBWAY, becoming its operator and captain." Pl.'s Trial Br. 26, ECF No. 31. This claim raises two arguments. First, whatever Lewan's job responsibilities (on the Ojibway or not), they were fundamentally directed at the operation and mission of the Ojibway, so he should be considered a seaman. Second, he was on the path to becoming a crane operator or captain, so again, he should be considered a seaman. Neither argument has merit.

First, Lewan claims that the gestalt of Soo Marine is the operation of the Ojibway for the purpose of supplying vessels with goods and provisions. This is correct. But it does not follow from that that all of Soo Marine's employees are seamen, as Lewan argues. The very definition of a longshoreman is "a labourer engaged in loading and unloading cargoes at a port."

Longshoreman, Oxford English Dictionary (OED Third Edition, June 2016). Thus, a longshoreman, much like Lewan, is necessarily engaged in the mission of the ships he loads and unloads. This alone does not make him a seaman.

Perhaps Lewan argues that he is unique because Soo Marine has one ship to which all of its employees are dedicated. But this still proves too much. Any longshoreman working for a company with a dedicated fleet of cargo ships would likewise be a seaman. As the Supreme Court explained in *Chandris*, mere service to a vessel is insufficient. There needs also to be "a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Chandris*, 515 U.S. at 368. The durational component seeks more than just working in service of a vessel as Lewan does. If it did not require more, the two prongs of the *Chandris* test would ask identical questions.[6]

Second, Lewan claims that he is a seaman because he was working to become a captain or crane operator. But this argument has no basis in the law. There is also no evidence to conclusively establish that captains and/or crane operators would be seamen under the Jones Act. Even if they were, the speculative prospect of being a seaman at some future time does not convey upon Lewan actual present seaman status.

Based on the evidence produced by the parties, Lewan does not qualify as a seaman under the Jones Act.

**IV.**

Accordingly, it is **ORDERED** and **ADJUDGED** that Plaintiff Eric Lewan does not qualify as a "seaman" for the purposes of coverage under the Jones Act, 46 U.S.C. § 30104.

---

[6] The first prong of the test requires that an "employee's duties . . . contribute to the function of the vessel or to the accomplishment of its mission." *Id.*

Dated: August 1, 2016                             s/Thomas L. Ludington  
                                                                         THOMAS L. LUDINGTON  
                                                                         United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 1, 2016.

                                           s/Michael A. Sian  
                                           MICHAEL A. SIAN, Case Manager